IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL JAY WOODS, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.4:04-CV-405-Y |
| | § | |
| KAREN CHAPMAN, Parole Supervisor, | § | |
| TDCJ-Parole Division, et al. | § | |

OPINION and ORDER OF PARTIAL DISMISSAL UNDER 28 U.S.C. §§ 1915A(B)(1) and UNDER 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii)
(With special instructions to the clerk of Court)

This case is before the Court for review of pro-se inmate plaintiff Michael Jay Woods's February 11, 2005, second amended complaint ("SAC") and August 3, 2005, more definite statement ("MDS") under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915.[1] Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[2] Furthermore, as a part of the PLRA, Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as

[1] *Neitzke v. Williams*, 490 U.S. 319,328 (1989). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West Supp. 2005).

[2] *See* 28 U.S.C.A. § 1915(e)(2)(West Supp. 2005); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)).

possible after docketing.[3] Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[4] Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory."[5]

Woods's SAC includes numerous counts against eighteen separate individual defendants organized in eleven different substantive counts. After review of Woods's SAC and MDS, the Court concludes that several of Wood's causes of action, and several of the individual defendants must be dismissed under the authority of 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for the reasons set forth below.

*Absolute Immunity*

The primary focus of Woods's lengthy SAC is the alleged actions taken by several different employees of the Texas Department of Criminal Justice ("TDCJ")-Parole division on different occasions related to proceedings to revoke his parole, or to impose additional conditions upon his parole. He has also named as individual defendants the chairman of the Texas Board of Pardons and Paroles ("the Parole Board"), Gerald Garret, and several members of the Parole Board including Lynn Brown, Juanita Gonzalez, and unidentified members John and Jane Doe. As a threshold matter, this

---

[3]*See* 28 U.S.C.A. § 1915A(a)(West Supp. 2005).

[4]*See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

[5]*Id., citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Court must consider the application of the doctrine of absolute immunity.[6] Noting that the determination of whether the absolute immunity extended to judges should be extended to other officials, the Supreme Court has focused on the job function of the particular official, such that it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our analysis."[7] The Fifth Circuit has extended such immunity to parole board members:

> Although the Supreme Court has not expressly extended absolute immunity to parole board members, the Court has noted with approval that "federal appellate courts have so held." *Cleavinger v. Saxner*, 474 U.S. 193, 200-01 (1985); *Walrath v. United States*, 35 F.3d 277, 282 n. 3 (7th Cir.1994). Most circuits now hold that "parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole." *Walrath,* 35 F.3d at 281 & n. 2. This circuit first granted absolute immunity to a parole board member over fifteen years ago. *See Cruz v. Skelton*, 502 F.2d 1101 (5th Cir.1974). Since then, we have repeatedly held that parole board members are absolutely immune when performing their adjudicative functions, distinguishing such decision-making activities from administrative functions for which parole board members are entitled to only qualified immunity. *See, e.g., Walter v. Torres,* 917 F.2d 1379, 1383 (5th Cir.1990)(finding parole board members absolutely immune and reiterating that "defendant's immunity depends *357 on function, not on identity"). [FN4] The Seventh Circuit has long held that parole board members' conduct that is "inexorably connected with the execution of parole revocation procedures" is entitled to absolute immunity. [FN5] *Walrath*, 35 F.3d at 282 (quoting *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir.1984)). The parole

[6] *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir.1994)(noting that absolute immunity is a threshold issue to be resolved as early in the proceedings as possible).

[7] *Forrester v. White,* 484 U.S. 219, 227-29 (1988).

> revocation functions to which the Seventh Circuit accords absolute immunity are "not only the actual decision[s] to revoke parole, but also the activities that are part and parcel of the decision process." *See Trotter*, 748 F.2d at 1182. We see no reason to hold differently.[8]

The actions complained of against the parole board member defendants involve challenges to their decisions and involvement in the different instances of revocation proceedings against Woods, and the imposition of certain conditions upon him as approved by these defendants. (SAC. ¶¶ 162,166,213,214,217-219, 391-396.) As Woods challenges each parole board member defendant's actions that were allegedly part of the consideration of adjudication of his parole status, the parole board member defendants are entitled to absolute immunity, and Woods's claims against them on these grounds must be dismissed under authority of 28 U.S.C. § 1915A(b)(2) and 28 U.S.C. § 1915(e)(2)(B)(iii0.

Likewise, hearing officer Karen Harris is also entitled to absolute immunity. Under established Texas law, parole officials "who personally participate in the 'quasi-judicial activity of revoking parole 'are absolutely immune from suit . . . ."[9] Woods's claims against Harris arise from her actions in presiding over a June 27, 2002, parole revocation hearing, and in ultimately issuing a recommendation that he not be revoked but subject to the additional conditions of electronic monitoring and to have no

---

[8] *Hulsey v. Owens,* 63 F.3d 354, 356-57 (5th Cir. 1995).

[9] *McGrew,* 47 F.3d at 161.

contact with Angela Johnson. Woods acknowledges that Harris was performing a quasi-judicial role in overseeing the revocation hearing, but contends such role ended prior to her imposition of new conditions. (SAC. ¶ 156). This argument is without merit, as the imposition of those conditions was a part of Harris's completion of the report on the hearing and her recommendation as to Woods. (MDS at Exhibit G, page 5.) Karen Harris is entitled to absolute immunity and Woods's claims against her must be dismissed under 28 U.S.C. § 1915A(b)(2) and 28 U.S.C. § 1915(e)(2)(B)(iii).

*Personal Involvement/Specific Facts*

Woods also alleges that the parole board member defendants, along with TDCJ-Executive Director Gary Johnson, TDCJ-Parole division director Bryan Collier, and TDCJ-Program Administrator T. Duffe were all aware that in 2002, the parole division had a policy allowing for its agents to issue warrants for the arrest of parolees without reasonable basis and without proper evidentiary support. He also alleges that these persons knew that a pattern existed by which parolees charged with a violation, were, after being found to not violate parole, still being detained several weeks beyond the date it was determined no violation occurred. Liability under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.[10] And, as to claims

[10]*See Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir. 1986); *Wanger v. Bonner,* 621 F.2d 675, 679 (5th Cir. 1980); *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir. 1979).

against individual defendants, a § 1983 plaintiff must plead specific facts, not unsupported allegations.[11]

When asked by the Court to provide "facts as to each defendant's knowledge of and personal involvement" with the allegations listed above, Woods did not provide any specifics as to these claims, asserting rather that he believes he can prove, after discovery, that such patterns and policies exist, and that the volume will evidence the defendants knowledge. (MDS. at ¶¶ 5-7.) But without pleading some specific factual events, a § 1983 plaintiff is not allowed to plead broad allegations in hopes of gaining supporting facts through future discovery.[12] Thus, as to Woods's allegations about the alleged pattern of issuance of parole violator warrants without just cause, and the alleged pattern of delayed release after no violation is found, Woods has not made specific factual allegations that any defendant was directly involved in or was aware of an instance of such practice or policy.[13] Rather, Woods appears to have named the parole board members on

---

[11]*See Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir. 1996); *Schultea v. Wood,* 47 F.3d 1427, 1432 (5th Cir. 1995)(noting that although *Leatherman v. Tarrant County Narcotics and Intelligence Unit,* 507 U.S. 163 (1993) overruled a heightened pleading standard for claims against municipalities, it remains applicable for cases against individual public officials).

[12]*Taylor v. Federal Home Loan Bank Bd.,* 661 F.Supp. 1333, 1339 (N.D.Tex. 1986)("[P]laintiffs suing public officials for damages should not be permitted to plead broad allegations and then rely upon depositions and other discovery to obtain the facts they need to state their case"), *citing Elliot v Perez,* 751 F.2d 1472, 1476-9 (5th Cir. 1985), *abrogated as to municipal liability claims, Leatherman,* 507 U.S. at 166-67.

[13]*See Bowen v. Watkins,* 669 F.2d 979, 987-89 (5th Cir. 1982); *Watson v. Interstate Fire & Casualty Co.,* 611 F.2d 120 (5th Cir. 1980).

these allegations, and Johnson, Collier and Duffe, purely because of their executive roles. A supervisory official, however, cannot "be held liable under § 1983 for the unlawful actions of his deputies on the basis of vicarious liability."[14] Although Woods also alleges that defendants failed to train their subordinates "in such a way to comply with the laws and Constitution," he has not alleged any causal link between any failure to train or supervise any of the respective parole division employees, and the alleged violations of his rights. Thus, the Court concludes that all Plaintiff's remaining claims against parole board members Garrett, Brown, Gonzalez, John Doe, and Jane Doe; and his claims that Gary Johnson and Bryan Collier were aware that parole violator warrants were issued without sufficient evidence, were aware that parolees were not being released in a timely manner, and failed to train subordinate employees to comply with state and federal law, must be dismissed under 28 U.S.C. § 1915A(b)(1) and (2) and 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).

*Limitations*

Woods has organized his complaint chronologically, setting out his allegations for the most part from the earliest events in late 2000 and early 2001 through alleged events in 2003. Count 1 recites events beginning in August 2000 when Woods was released to parole under the supervision of the Texas Department of Criminal Justice-

[14] *Wanger,* 621 F.2d at 679, *citing Baskin v. Parker* 602 F.2d 1205, 1207-08 (5th Cir. 1979).

Parole division and ending in April 2001. The bulk of the paragraphs in this count relate to the February 26, 2001, issuance of a parole-violator warrant for Woods's arrest, allegedly in retaliation for his testimony that was critical of security conditions in TDCJ correctional division units, given before the Texas Senate's Committee on Criminal Justice and the Texas House of Representatives' Committee on Corrections earlier that month.

The Supreme Court has held that all § 1983 actions are governed by the statute of limitations for personal-injury actions for the state of suit.[15] In Texas, the applicable limitations period is two years.[16] A district court may dismiss claims *sua sponte* under § 1915 where it is clear from a review of the complaint that the alleged claims are barred by the applicable statute of limitations.[17]

Accrual of a claim under § 1983 is determined by federal law,[18] under which a claim generally accrues when a plaintiff knows or has reason to know of the injury giving rise to the cause of action.[19]

---

[15] *See Wilson v. Garcia,* 471 U.S. 261, 273-76 (1985)(state statute of limitations period for personal-injury actions applies to all claims under 42 U.S.C. § 1983).

[16] *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994)(noting that district courts in Texas must use Texas's general two-year, personal-injury limitations period); *see* TEX. CIV. PRAC. & REM. CODE 16.003(a)(Vernon 2002) (Texas's two-year, personal-injury limitations statute).

[17] *See Harris v. Hegman,* 198 F.3d 153, 156 (5th Cir. 1999); *see also Moore,* 30 F.3d at 620, *citing Gartrell V. Gaylor,* 981 F.2d 254, 256 (5th Cir.1993).

[18] *See Harris,* 198 F.3d at 157; *see also Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir. 1989).

[19] *See Harris,* 198 F.3d at 157*, citing Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir. 1992) and Burrell, 883 F.2d at 418.

In Count 1 Woods complains of alleged retaliatory actions in February 2001, but he recites that he was told by both a state representative and a parole officer in the same time period that he could be subjected to retaliatory acts due to his outspoken criticism. The Court finds no basis to believe that Woods did not know or have reason to know of the injuries giving rise to his claims at the time of the 2001 events. Since Woods did not file this suit until May 2004, his claims recited in Court 1 are too late: the applicable two-year statute of limitations already had expired over a year prior to the time Woods filed suit. Accordingly, Woods's claims in Count 1 of the SAC must be dismissed under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(b)(i) and (ii).

*Exhaustion/Physical injury*

The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[20] In count eleven of his second amended complaint, Woods

[20] 42 U.S.C.A. § 1997e(a)(West Supp. 2005). Although Woods contends that as a parolee serving time as a condition of parole he is not subject to this exhaustion requirement, the statute expressly applies to his status:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

42 U.S.C.A. § 1997(h)(West Supp. 2005).

raises complaints about conditions while housed in the Tarrant County jail in October 2002, and he recites several different incidents about the conditions of his confinement while in the Baten Intermediate Sanction Facility ("ISF") in Pampa, Texas, between late November 2002, and January 23, 2003. Woods was in both facilities as the result of the imposition of ISF housing as an additional condition of parole. Woods complains of the following: Tarrant County officials' failure to provide a 12-step recovery book; lack of adequate socks and footwear for the transfer from the Tarrant County jail to the Baten ISF; the requirement upon arrival at Baten ISF that he wait in line naked and then be subjected to a shave and close haircut; failure by the Baten ISF to provide 12-step recovery books; and failure to provide substance-abuse counseling or a 12-step recovery program. (SAC. ¶¶ 297-330.)

In *Booth v. Churner,* 532 U.S. 731(2001), the Supreme Court held that Congress intended with the passage of § 1997e(a) for a prisoner to invoke whatever administrative grievance remedies are available within a jail or prison, without regard to whether the grievance procedure affords money-damage relief, before he may file suit contesting prison conditions in federal court.[21] As the Court of Appeals for the Fifth Circuit has since explained:

> Quibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in *Booth*. Justice Souter summed up the Court's conclusion in a

[21] *Booth,* 532 U.S. at 741-42.

footnote:

> Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources.[22]

The Supreme Court since clarified that the 1997e(a) exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[23]

In response to the question in the order for a more definite statement about exhaustion, Woods provided a copy of a grievance form he submitted at Tarrant County jail regarding the request for 12-step materials, and a copy of a step 1 grievance he submitted in the Baten ISF regarding the hair-grooming issue. As to both issues, however, Woods failed to provide any indication that he completed the next step of the grievance process to show that he met the exhaustion requirement applicable to each facility.[24] By choosing to file and pursue a lawsuit before meeting the section 1997e exhaustion-of-administrative-remedies requirement as to claims arising "with respect to prison conditions," plaintiff Woods sought

---

[22] *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001), *citing Booth,* 532 U.S. at 741 n.6.

[23] *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

[24] *See Wright v. Hollingsworth,* 260 F.3d. 357, 358 (5th Cir. 2001)(TDCJ inmate must complete all "available" remedies, which includes the filing of a step 2 grievance); *Crain v. Prasifka,* 97 S.W.3d 867, 870 (Tex. App. 2003)(step 2 grievance still mandatory even where step 1 grievance forwarded to an internal affairs review); *Coffer v. Tarrant County, Texas,* No.Civ.A. 4:02-CV-553-Y, 2005 WL 1314000, at *2 (N.D.Tex. May 31, 2005)(for a conditions claim arising in Tarrant County jail, inmate must complete available appeal step beyond initial grievance).

relief to which he was not entitled.[25] Because Woods's filing of such claims presently lack an arguable basis in law, they may be dismissed as frivolous for in-forma-pauperis purposes under 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii), but without prejudice to refiling in a fee-paid complaint asserting the same allegations.[26]

Other amendments resulting from the PLRA also limit Woods's ability to recover on claims arising from his confinement. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."[27] The injury required by this statute "'must be more than *de minimus* [sic], but need not be significant.'"[28] Woods acknowledged in his more definite statement that he suffered "no permanent physical injury," he did not otherwise specify any physical injury, and he acknowledged that he did not require any medical treatment. (MDS at3-4.) Thus, any claim for compensatory damages for physical, mental, or emotional injury

---

[25]*See Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir. 1998).

[26]*Id.* at 296; *see also Hill v. Roach Unit,* No. 2:02-CV-0340, 2003 WL 21251699 at * 2 (N.D.Tex. May 28, 2003)(prisoner complaint filed prior to exhaustion under 1997e may be dismissed as frivolous under § 1915((e)(2)(B)); *see also Smith v. Strain,* No.Civ.A. 03-612, 2004 WL 1837380, at *2 (E.D. La. Aug. 17, 2004)("If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915").

[27] 42 U.S.C.A. § 1997e(e)(West Supp. 2005).

[28]*Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).

resulting from Woods's conditions-of-confinement claims as asserted against defendants Collier and Johnson are dismissed under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) and (ii).

The Court will allow Woods to obtain service of the remaining claims against the remaining individual defendants by a separate order issued this day.[29]

Therefore, all claims in Count 1 of the SAC are hereby DISMISSED WITH PREJUDICE under the authority of 28 U.S.C. § 1915A(b)(1) and alternatively 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

All claims against Karen Harris, Gerald Garrett, Lynn Brown, Juanita Gonzalez, parole board members John and Jane Doe, and Bryan Collier and Gary Johnson are DISMISSED WITH PREJUDICE under authority of 28 U.S.C. § 1915A(b)(1)and (2) and alternatively, 28 U.S.C. § 1915e(2)(B)(i),(ii) and (iii).

Any claim for compensatory damages for physical, mental, or emotional injury resulting from Woods's conditions-of-confinement claims are DISMISSED WITH PREJUDICE under authority of 28 U.S.C. § 1915A(b)(1) and, alternatively, 28 U.S.C. §1915(e)(2)(b)(i) and

[29]Under *Heck v. Humphrey,* 512 U.S. 477, 486 (1994), a claim that, in effect, attacks the constitutionality of imprisonment is not cognizable under 42 U.S.C. § 1983 and does not accrue, until such sentence has been set aside either on appeal, by executive order, or through issuance of a writ of habeas corpus. *Heck* is applicable to 42 U.S.C. § 1983 claims that challenge parole revocation proceedings. *See Little v. Bd. of Pardons and Paroles Div.,* 68 F.3d 122, 123 (5th Cir. 1995); *McGrew v. Texas Bd. Of Pardons and Paroles.* The Supreme Court recently clarified that although challenges only to the procedures used to determine parole eligibility may go forward in a civil suit, if the claims "seek to invalidate the duration of [an inmate's] confinement–-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody," the prisoner must pursue such claim through habeas corpus or similar remedies. Under this Court's initial review of Woods' challenges to the events incident to his different revocation proceedings, and since he is not presently incarcerated as a result of a revocation, the Court has not yet reached whether any of Woods's remaining claims are barred by *Heck* and *Wilkinson.*

(ii).

Any remaining conditions-of-confinement claims are DISMISSED WITH PREJUDICE to refiling in forma pauperis pursuant to 28 U.S.C. § 1915A(b)(1) and, alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[30]

SIGNED March 7, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

[30]Such a dismissal is without prejudice to refiling a fee-paid complaint making the same allegations but proving exhaustion of administrative remedies. *See Wright,* 260 F.3d at 359 (holding that dismissal for the failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a)should be without prejudice and that the applicable statute of limitations should be equitably tolled during the pendency of dismissed suit and any additional administrative proceedings).