IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL JAY WOODS,                §
                                  §
VS.                               §   CIVIL ACTION NO.4:04-CV-405-Y
                                  §
KAREN CHAPMAN,Parole Supervisor,§
TDCJ-Parole Division, et al.      §

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Now pending before the Court is the motion for summary judgment of defendants Merry Sivadge Miller,[1] William King, Juanetta Hayes, Latita Murff, Ayodele Fasoro, Thomas Duffe, and Allen Kigigha.  The case was stayed pending Woods's release from prison, but after it was re-opened, Woods was permitted to file a response to the summary-judgment motion.

Plaintiff Woods's pleadings that are subject to the Court's review are the second amended complaint (SAC) (docket no. 17) and his reply under Federal Rule of Civil Procedure 7 (docket no. 75).[2] The remaining claims before the Court involve a series of actions by the individual defendants, each of whom is an employee/official of the Texas Department of Criminal Justice--Parole Division ("TDCJ--PD") associated with the issuance of parole-violator warrants against Woods. The defendants' collective motion for summary judgment claims the defense of qualified immunity, and

---

[1]As the pleadings and Woods's summary-judgment evidence all refer to this defendant as "Merry Sivadge," the Court will also call her Sivadge.

[2]Although Woods filed an amended more definite statement, (docket no. 40), that document included information related to claims that have since been dismissed, and is thus not considered relevant to the remaining claims.

asserts that there is no genuine issue of material fact and that they are entitled to qualified immunity as a matter of law. After review and consideration of the motion for summary judgment, the response, and the applicable law, the Court concludes that the motion should be granted, for the reasons stated in the motion and as set forth herein.

*Summary-Judgment Evidence*

Defendants submitted no evidence in support of their motion for summary judgment. Plaintiff Woods attached to his response an appendix containing the following documents: May 23, 2002, TDCJ--PD report (1); March 1, 2005, TDCJ--PD Policy and Operating Procedure for "Processing Violations of the Rules and Conditions of Release"(5); May 23, 2002, White Settlement police department narrative (13); June 7, 2002, TDCJ--PD Interoffice Memorandum re: notice of arrest of Woods (14); August 14, 2002, verified statement of Angela Michelle Johnson (15); July 2, 2002, Texas Board of Pardons and Paroles ("TBPP") Revocation Hearing Report (17); July 18, 2002, TDCJ--PD Notice of Special Condition (no contact w/Johnson)(22); July 18, 2002, TDCJ--PD Notice of Special Condition (electronic monitoring)(23); November 26, 2004, verified statement of John Miller (24); February 24, 2006, "Affidavit" of Michael Woods (26); May 1, 2002, Apartment Lease between Woods and Johnson and Windmill Terrace Apartments (31); August 13, 2002, TDCJ--PD parole-violation report (37); September 4, 2002, TBPP, Revocation

Hearing Report (41); March 15, 2007, TDCJ--PD Policy and Operating Procedure for "Electronic Monitoring Program" (46); letter from TDCJ Assistant Regional Director Smith to Woods (47); September 13, 2002, letter from State Representative Terri Hodge to Woods (49); September 13, 2002, TBPP Revocation report (50); October 23, 2002, TBPP Revocation Hearing report (51); and September 18, 2002, TDCJ--PD violation report (58).[3] Also, as Woods expressly declared that his August 7, 2006, reply was true and correct under penalty of perjury, this Court is required to consider this pleading as competent summary-judgment evidence.[4]

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5]  The party

---

[3]Although none of these documents is presented as a certified copy or otherwise authenticated sufficiently to be considered as sufficient summary judgment evidence over objection, Defendants have not objected to or contested them. Thus, for the purposes of this motion, the Court will consider these documents, notwithstanding the lack of authentication. The Court notes, however, that Michael Woods's own February 24, 2006, "affidavit," is not sworn to in the presence of an authorized officer, nor are the statements contained therein expressly made "under penalty of perjury" and verified as "true and correct" to satisfy the exception for unsworn declarations under 28 U.S.C. § 1746.  Thus, Woods's affidavit must be disregarded as summary-judgment proof. *See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989); *see also Yett v. Peters,* No.4:08-CV-0343-A, 2008 WL 2815587, at *1 (N.D.Tex. July 7, 2008).

[4]*See Nissho-Iwai American Corp.,* 845 F.2d at 1306.  The Court notes that Woods's Second Amended Complaint, like his February 24, 2006, affidavit, does not recite that the statements therein are made "under penalty of perjury" and verified as "true and correct."  Thus, this pleading is not considered sufficient summary-judgment evidence.

[5]FED. R. CIV. P. 56(c).

moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence that tends to show that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law.[6]   Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.[7] Whether an issue is "genuine" is a determination of whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[8]   A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[9] No genuine issue of material fact exists if no rational trier of fact could  find for the nonmoving party based on the evidence presented.[10]   The Court must consider all evidence in the light most favorable to the nonmoving party.[11]

---

[6]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*  477 U.S. 242, 248 (1986).

[7] *Id.*, at 322-23; *Anderson,* 477 U.S. at 257.

[8]*Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)(noting that only genuine and substantial issues may subject a defendant to the burden of trial)(quoting *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945).

[9]*See Anderson,* 477 U.S. at 248.

[10]*See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

[11]*See Id.* at 713.

*Analysis*

Qualified immunity shields government officials performing discretionary tasks from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[12]  In *Saucier v. Katz,*[13] the Supreme Court mandated a two-step sequence to resolve a qualified-immunity claim: first, a court determines whether the facts alleged or shown state a violation of a constitutional right; second, a court must decide whether the right was clearly established at the time of the defendant's conduct.[14]  In the recent case *Pearson v. Callahan,*[15] however, the Supreme Court retreated from this sequential approach:

> while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[16]

Thus, under *Pearson*, this Court may resolve the qualified-immunity issue through analysis under the second step.  But because

---

[12]*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

[13]533 U.S. 194 (2001).

[14]*Id.* at 201.

[15]129 S.Ct. 808 (2009).

[16]*Id.* at 818.

the Court previously denied a motion to dismiss on this issue, the Court will address and analyze the first step of the qualified-immunity inquiry.[17]

*Sivadge Miller, King, Hayes, Murff and Duffe*

The bulk of Woods's remaining allegations relate to these listed defendants, and arise from his belief that parole violator warrants were issued on three different occasions without the defendants' having sufficient "reason to believe" a violation had occurred. Woods does not contest the defendants' assertion that parole officials were required to have only a "reason to believe" that he had violated the conditions of his parole to constitute sufficient probable cause to issue a parole-violation warrant.[18] Although the Court previously found that Woods recited facts in his pleadings sufficient to state a claim that defendants violated his right not to be subjected to the issuance of a parole warrant

---

[17]*See generally Pearson,* 129 S.Ct. at 821 ("Our decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases.")

[18]*See Jones v. State,* 119 S.W. 3d 766, 786 (Tex.Crim App. 2003)

("[W]e have held in the context of a parole violation that a judgment coupled with a finding by the court that there is a "reason to believe" that the defendant has violated the conditions of his parole will constitute sufficient probable cause to support the issuance of a parole violation warrant"), *cert den'd,* 542 U.S. 905 (2004)

(citing *Garrett v. State,* 791 S.W.2d 137, 140 (Tex. Crim. App. 1990)).

6

without sufficient reasons in support, the summary-judgment evidence supplied by Woods shows otherwise.

With regard to the May 23, 2002, decision to issue a parole-violation warrant, Woods provided the "Narrative" of White Settlement police officer J. Kavanaugh, in which he recites that Angela Johnson "stated that her ex-boyfriend Michael J. Woods had called her and said 'that he was going to be on the News tonight,' because he was going to kill her and her mother.'" (Woods App. 13.) Kavanaugh also noted that Johnson wanted him to convey this information to Woods's parole officer Jaunetta Hayes, which Kavanuagh did. (Woods App. 13.) Woods also provided a copy of the May 23, 2002, violation report prepared by Hayes, in which Hayes noted that she had talked to Johnson, and that Johnson reported that Woods "has made terroristic threats on her life and family." Hayes noted both in her narrative and in a special comments section, that Johnson would not submit an affidavit because she was afraid of Woods. (Woods App. 2-3.) The document also shows that Hayes, unit supervisor Latitia Murff, and program administrator T. Duffe all agreed that a warrant should issue. (Woods App. 3-4.) Angela Johnson stood by her allegations that Woods threatened her during the resulting parole-revocation hearing, and the hearing officer noted she was granted "fearful witness status." (Woods App.

19.) Although Johnson later claimed in a statement that her allegations were untrue, she acknowledged that such allegations resulted in the warrant's issuing for Woods's arrest. (Woods App. 15.)

A review of this evidence provided by Plaintiff establishes that the defendants had a reason to believe that Woods had violated the conditions of his parole when they were notified of his threat to Johnson. That the defendants requested the issuance of a warrant without an affidavit from Johnson was justified due to Johnson's fear of providing such an affidavit. Further, the fact that the White Settlement police department did not arrest Woods is not controlling, as the defendants were obligated to investigate all suspected violations under a standard of whether there was a reason to believe a violation occurred. Woods has not shown that there is a genuine issue of material fact as to whether the issuance of the warrant resulting from the May 23, 2002, events violated a constitutional right.

Although Woods's parole was not revoked as a result of the May 23, 2002, incident, his continued supervision was modified such that he was subjected to the special conditions of having no contact with Angela Johnson and of electronic monitoring. (Woods App. 21-23.) Woods objected to these new conditions, but signed an

instrument indicating that he understood and agreed to them on July 18, 2002. (Woods App. 22-24.) In spite of this, Woods met with Angela Johnson on August 10, 2002.  Woods did so, even though he acknowledged to Johnson it would be a violation of his parole. (Woods App. 15-16,  25.) Johnson then informed parole officer Merry Sivadge of Woods's contact with her and, when Sivadge questioned Woods on August 13, 2002, he told her that Johnson had been staying with him since August 10. (Woods App. 38.) As a result, Sivadge, unit supervisor Bill King, and program administrator K. Sheick all recommended that a warrant issue. (Woods App. 37-40.)

Again, the evidence supplied by Woods confirms that he violated the special conditions of his parole by having contact with Angela Johnson on August 10 and after.  Without question, the defendants had a reasonable basis to believe that he had violated a condition in order to justify the issuance of a parole-violation warrant.  Woods continues to challenge whether the no-contact-with-Johnson condition was authorized.  But such argument has nothing to do with the claims remaining against the summary-judgment defendants.  They did not make the decision to impose the no-contact-with-Johnson condition. As such, the Court concludes that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law with regard to Woods's

claims arising from the issuance of a parole-violator warrant after the August 10-13, 2002, events.

After another parole-revocation hearing, the Texas Board of Pardons and Paroles chose to again continue Woods on supervision, and determined that the no-contact-with-Johnson condition should be removed.  As a result, Woods was released from the Tarrant County jail on September 17, 2002.  On September 18, Sivadge, unit supervisor King, and parole supervisor Chapman again issued a parole violation report on the basis that Woods had failed to report to their office within 24 hours of release as instructed. (Woods App. 58-60.) Woods reported to the Fort Worth parole office at 4:45 p.m. on September 18, and, reviewing in the light most favorable to Woods, he was released from the jail on September 17, 2002, about 6:30 p.m. (Woods App. 25, 55.) Sivadge believed, and another official testified at a later revocation hearing, that Woods had been released at 4:22 p.m.   Thus, Sivadge, King and Chapman had sufficient reason to believe that Woods had failed to timely report on September 18, and they are entitled to judgment as a matter of law on this claim.

Plaintiff alleges that the actions analyzed above were taken in retaliation for his conduct in testifying before the Texas legislature in 2001 regarding criticism of the Texas Department of

10

Criminal Justice.  In order to state a valid claim under § 1983 on the basis of retaliation, a prisoner must allege (1) a specific constitutional right,(2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.[19]  With regard to the first element, the inmate must point to a specific constitutional right that has been violated, or the claim will fail.[20]  Because the Court has concluded that Woods has not show that genuine issues of material fact exist on whether the complained-of issuance of parole-violation warrants violates a constitutional right, he has also not set forth a genuine issue of material fact on this required element of a retaliation claim.

Furthermore, a retaliation claim requires the inmate plaintiff to "establish that but for the retaliatory motive the complained of incident . . . would not have occurred.[21]  Furthermore, "mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence

---

[19]*See Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *see also Jones v. Greninger,* 188 F.3d 322, 324-25 (5th Cir. 1999).

[20]*Greninger*, 188 F.3d at 325 (citing *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996)(inmate's claims dismissed for failure to demonstrate violation of a constitutional right) and *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("to state a claim, an inmate must allege the violation of a specific constitutional right")).

[21]*Woods,* 60 F.3d at 1166.

of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"[22] Evidence that action of the official is legitimate is probative and potent summary-judgment evidence.[23]

As noted in the discussions above, the complained-of actions of defendants each were taken based upon legitimate factual bases independent of any possible retaliatory motive. Furthermore, Woods has failed to produce any direct evidence of motivation on the part of the defendants to retaliate and has produced no evidence that but for any such motive, the actions related to his parole violations would not have occurred. Thus, Woods has not shown a genuine issue of material fact on his retaliation claims against Sivadge, King, Hayes, Murff, and Duffe, and they are entitled to judgment.[24]

*Fasoro and Kigigha*

In June of 2003, after Woods's parole had been revoked, and he

---

[22]*Id.* (quoting *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)(other citations omitted).

[23]*Id.*

[24]In Counts 6 and 7 of his second amended complaint, Woods alleges that these defendants' actions were taken with knowledge that he was, when arrested on the complained-of parole-violation warrants, in treatment for drug addiction/chemical dependency and that their actions were done with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Woods has come forward with no evidence to support these allegations. Thus, defendants are also entitled to judgment as a matter of law on such claims.

had served a period of time in an intermediate sanction facility, he was again released to parole supervision by the Fort Worth office through the person of parole officer Ayodele Fasoro. Woods alleges that when he raised challenges to his being continued on electronic monitoring beyond the applicable time, Fasoro informed him that he had failed a drug test and tested positive for cocaine, which resulted in Woods's then being subjected to an additional period of electronic monitoring. (SAC 360-369.) Woods alleges it was defendant Allen Kigigha who informed him that the positive drug test would result in a new electronic-monitoring period. (SAC 367) Woods acknowledges that late in July 2003, he removed the electronic-monitoring ankle bracelet and fled Texas to Illinois.

Woods's claims against Fasoro and Kigigha are based only upon their notification to him of the results of a drug test. Although he contends the positive drug test was false, he has provided no evidence in response to these defendants' motion showing they retaliated against him, nor has he provided any evidence of causation. He has made no showing of any genuine issue of material fact concerning whether Fasoro or Kigigha violated a constitutional right.

Thus, the Court concludes that as to all summary-judgment defendants, there is no genuine issue of material fact as to the

violation of Woods's constitutional rights. Although the Court need not reach the second step of the qualified-immunity analysis, it will briefly note the standards in concluding that Woods has not satisfied the second prong either.

In *Saucier,* the Supreme Court explained the "relevant, dispositive inquiry in determining whether a right is clearly established [for the second step] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[25] The Fifth Circuit has sometimes characterized the second prong as divided into two separate and distinct inquires: whether the right was clearly established and whether an officer's conduct was objectively reasonable.[26] But, recently the court of appeals determined "[t]he Supreme Court's recent case law makes it clear that these inquires are more appropriately viewed not as separate and distinct, but as two sides of the same analytical coin."[27]

In order for a right to be "clearly established" the contours of the right "must be sufficiently clear that a reasonable official

---

[25]*Saucier,* 533 U.S. at 202.

[26]*Quinn v. Roach,* 2009 WL 1181072, at *4,n 2 (5th Cir. May 4, 2009)(citing *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998)(other citations omitted).

[27]*Quinn,* 2009 WL 1181072, at *4, n 2.

would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of pre-existing law the unlawfulness must be apparent."[28] If the law does not put the defendant on notice that their conduct would clearly be unlawful, summary judgment based on qualified immunity is appropriate.[29]

Applying these standards to the record of this case, Woods has not come forward with evidence to show that any of the summary-judgment defendants violated a right that was clearly established at the time of their conduct.

Therefore, the January 15, 2008, motion for summary judgment of defendants Merry Sivadge Miller, William King, Juanetta Hayes, Latita Murff, Ayodele Fasoro, Thomas Duffe, and Allen Kigigha (docket no. 116) is GRANTED.

Plaintiff shall take nothing on his remaining claims against defendants Merry Sivadge Miller, William King, Juanetta Hayes, Latita Murff, Ayodele Fasoro, Thomas Duffe and Allen Kigigha, and

---

[28]*Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Anderson,* 483 U.S. at 640); *see also Saucier,* 533 U.S. at 202 ("[T]he right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense")(quoting *Anderson,* 483 U.S. at 640).

[29]*Saucier,* 533 U.S. at 202.

such claims are DISMISSED WITH PREJUDICE.

SIGNED June 10, 2009.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

16